IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DURWYN TALLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-1032-NJR-DGW |
| | ) |
| TRACY LEE, JACQUELINE LASHBROOK, WILLIAM ANDREW SPILLER, MAJ MONJE, BRANDON ANTHONY, LANCE PHELPS, KIMBERLY BUTLER, TERRI ANDERSON, DONALD STOLWORTHY, MS. COWAN, and C/O FITZGERALD, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Reports and Recommendations of United States Magistrate Judge Donald G. Wilkerson entered on October 9, 2015, and October 14, 2015 (Docs. 27, 30).[1] Magistrate Judge Wilkerson recommends that Plaintiff Durwyn Talley's Motions for Temporary Restraining Order and Preliminary Injunction (Docs. 6, 10, and 29) be denied. Talley filed a timely objection to the Reports and Recommendations on October 19, 2015 (Doc. 34).

Shortly after filing his objection, Talley filed another Motion for a Temporary

---

[1] The later filed Report and Recommendation (Doc. 30) is labeled an Amended Report and Recommendation; it was filed to address a "Supplemental Motion in Support of Temporary Restraining Order and Preliminary Injunction" (Doc. 29) filed by Talley after the first Report and Recommendation was issued. Thus, the first Report and Recommendation (Doc. 27) is moot.

Restraining Order and Preliminary Injunction (Doc. 38). Magistrate Judge Wilkerson took that motion under advisement (*see* Doc. 42), and Defendants filed a timely response to the motion (*see* Doc. 44).[2] Since then, Talley has filed two supplements to the later filed motion (*see* Docs. 50, 51), a reply to Defendants' response to the motion (Doc. 52), and another supplemental motion in support of the motion seeking injunctive relief (Doc. 55). Defendants have responded to all of Talley's filings seeking injunctive relief (*see* Docs. 56, 58).

## BACKGROUND

Durwyn Talley is currently an inmate at Western Illinois Correctional Center ("Western") in Mt. Sterling, Illinois. He filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 alleging that he was in imminent danger and was being denied protective custody while he was housed at Menard Correctional Center ("Menard"). Talley claims that he notified Menard officials that there was a "gang hit" out on him because he had been labeled a "stool pigeon." Talley alleges that Defendants refused to do anything to help him because of the numerous grievances and lawsuits he has filed against them. The complaint was screened pursuant to 28 U.S.C. § 1915A, and Talley was permitted to move forward on one count against Defendants for conspiring to retaliate against him for filing grievances and lawsuits by denying him placement in protective custody in violation of his rights under the First and Eighth Amendments (Doc. 5).

The complaint was read to include a motion for a preliminary injunction (Doc. 5).

---

[2] Defendants also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see* Docs. 45, 46), and Talley filed a written response (Doc. 57). That motion will be addressed by separate order. Magistrate Judge Wilkerson stayed discovery pending a ruling on the motions seeking injunctive relief and the motion to dismiss (*see* Doc. 61).

Two days after filing his complaint, Talley formalized his motion seeking a preliminary injunction (Doc. 6). Talley filed another motion for a preliminary injunction and a temporary restraining order on September 28, 2015 (Doc. 10). As set forth above, Talley has continued to seek injunctive relief, even after being transferred from Menard to Pinckneyville Correctional Center ("Pinckneyville"), and finally to Western.[3]

Magistrate Judge Wilkerson held a hearing on October 2, 2015; Talley appeared by videoconference, and Defendants appeared through counsel (Doc. 23). At the conclusion of the hearing, Magistrate Judge Wilkerson directed Defendants to have Talley's grievance counselor at Menard, Mr. Brad Bramlet, file an affidavit. An affidavit was filed on October 6, 2015 (*see* Doc. 22).

## DISCUSSION

### I. REPORT AND RECOMMENDATION

Where timely objections are filed, the court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). Where neither timely nor specific objections to the Report and Recommendation are made, however, the court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985). Instead, the court should review the Report and Recommendation for clear

---

[3] According to notices of change of address Talley filed with the Court, Talley was transferred from Menard to Pinckneyville (*see* Doc. 37) and from Pinckneyville to Western (*see* Doc. 53). According to the official website of the Illinois Department of Corrections, he remains at Western.
*See* https://www.illinois.gov/IDOC/OFFENDER/Pages/InmateSearch.aspx (last accessed May 6, 2016).

error. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As mentioned above, Talley filed an objection to Magistrate Judge Wilkerson's Reports and Recommendations on October 19, 2015 (Doc. 34). He sets forth several issues in his objection where he believes Magistrate Judge Wilkerson erred. First, Talley objects to Magistrate Judge Wilkerson's finding that he was not credible in his claims that he was being threatened by fellow inmates. Secondly, Talley objects to Magistrate Judge Wilkerson's conclusion that he never requested protective custody while housed at Menard. Finally, Talley objects to Magistrate Judge Wilkerson's discussion of his request to be transferred to a different facility.

### A. CREDIBILITY FINDINGS

After a review of the record, the Court adopts Magistrate Judge Wilkerson's credibility findings. *See United States v. Raddatz*, 447 U.S. 667 (1979). After observing Talley's testimony, Magistrate Judge Wilkerson found that Talley is "prone to exaggeration in his assertions of danger" (Doc. 30, p. 3). Magistrate Judge Wilkerson also concluded that some of Talley's beliefs may be supported by an actual event, but it is more likely that they are "based on assumptions and conjectures." (*Id*).

Talley claims in his objection that fellow inmates were threatening to harm him "if he kept filing lawsuits [and] threatening him because of his stool pigeon status" (Doc. 34, p. 1). But Talley offers no evidence to support this assertion, and it does not appear that Talley was ever attacked while he was housed at Menard. Talley appears again to be

exaggerating his circumstances. The Court finds that what Talley labels as a threat was a warning from fellow inmates about the repercussions Talley *might* face if he continues to file lawsuits, rather than a threat of actual harm.

### B. PROTECTIVE CUSTODY

Talley also objects to the finding that he never sought protective custody while housed at Menard (*Id.*, p. 2). He argues that Magistrate Judge Wilkerson also erred in finding that Counselor Bramlet had only been Talley's counselor for one month (*Id.*, pp. 3-4). Talley also states that Magistrate Judge Wilkerson was incorrect in his finding that he never sought protective custody, "[b]ecause the defendants have submitted no evidence to rebut plaintiff's claims that his request for protective custody was denied" (*Id.*, p. 2). Because Talley is the one seeking to be placed in protective custody, it is his burden, not Defendants', to meet the threshold requirements for a preliminary injunction. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) ("Besides showing that he has no adequate remedy at law and that he will suffer irreparable harm unless the preliminary injunction is granted, the plaintiff has another threshold to cross: that of showing some likelihood of succeeding on the merits."). Thus, Defendants have no responsibility to provide the Court with evidence that may or not may support Talley's contention.

Talley also argues that Counselor Bramlet was dishonest in his affidavit in stating that he has only been Talley's counselor for 30 days (Doc. 34, pp. 3-4). Talley cites to another case currently in this district court, *Talley v. Trost, et. al*, No. 14-cv-948-SCW, stating that he filed a supplemental complaint in this matter that will prove that he

requested protective custody in May 2015, was denied protective custody, and that Counselor Bramlet was his counselor during this time. In the case before Magistrate Judge Williams, Talley's supplemental complaint sought to add a claim and twelve new defendants, alleging that the defendants attempted to delay and destroy his legal mail. In that case, Talley's request was ultimately denied because the underlying action concerned deliberate indifference to his serious medical need, which is wholly unrelated to delayed or destroyed mail. Nothing in the supplemental complaint relates to Talley's alleged request for protective custody. Talley's assertion that this supplemental complaint will provide the Court with evidence that he was denied protective custody fails.

Further, the Court rejects Talley's objection that Counselor Bramlet is being dishonest in his statement that he has only been his counselor for one month (Doc. 34, p. 5). Talley's only support for this objection is that Counselor Bramlet was his counselor when he was allegedly sought protective custody in May 2015 (*Id.*). As discussed above, however, there is no evidence before the Court that proves Talley ever sought protective custody. Due to lack of evidence, the Court rejects Talley's objection that he sought protective custody and that Counselor Bramlet was untruthful in his statement that he was Talley's counselor for one month.

### C. FACILITY TRANSFER

Talley further objects to Magistrate Judge Wilkerson's discussion of his transfer to a new facility. Talley states that this "had nothing to do with whether or not plaintiff was receiving threats from inmates in his immediate surroundings" (Doc. 34, p. 2).

Magistrate Judge Wilkerson discussed Talley's transfer to a new facility because in his motion Talley states that he "seeks an immediate transfer to Pontiac Correctional Center's–protective custody under a single-cell status, or a transfer back to a medium-security prison where there is no active gang count." (Doc. 10, p. 5).

Magistrate Judge Wilkerson concluded that Talley was not entitled to an injunction ordering that he be transferred to a new facility because he was already in the process of being transferred (Doc. 30, p. 7). Magistrate Judge Wilkerson also found, and the undersigned agrees, that Talley's desire to be in a particular facility is secondary to the responsibility of the Illinois Department of Corrections to house him in a facility that meets his security requirements (*Id*.). Additionally, it was not within Magistrate Judge Wilkerson's authority to direct the Illinois Department of Corrections to transfer Talley to a different facility. *See Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir.1982) ("interprison transfers obviously are not 'mindless events;' rather, 'transfers between institutions. . . are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate.' . . . Such discretionary decisions are the business of penologists and 'are not the business of federal judges.'") (*citing Meachum v. Fano*, 427 U.S. 215, 226-229 (1976)).

The Court also notes Talley's motions are likely moot because he was granted the relief sought when he was transferred from Menard to Pinckneyville and then to Western. It is well established that when a prisoner is transferred to another prison, his requests for injunctive relief against officials of the first prison are moot unless "he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th

Cir. 1996) (citation omitted); *See also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Currently, there is no evidence before the Court to suggest that Talley is likely to be retransferred to Menard, meaning his motions are likely moot.

## II.  TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

As mentioned above, after the Reports and Recommendations were issued, Talley was transferred to Pinckneyville and then to Western, yet he continues to file motions seeking injunctive relief. Thus, the Court will address those motions now.

In his numerous filings, Talley seeks both a temporary restraining order and a preliminary injunction. The major difference between the two remedies is that the former is issued prior to notice to an adverse party. The goal of a temporary restraining order is to maintain the status quo until a hearing can be had on a motion for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 45 U.S. 442, 439 (1974)("[T]emporary restraining orders are no doubt necessary in certain circumstances . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.").

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Talley

has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *See Planned Parenthood v. Commissioner of Indiana State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success–in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once Talley has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

While Talley was housed at Pinckneyville, he sought a transfer to another facility because of his encounters with particular inmates. Specifically, Talley claims he began receiving death threats from a "Vice Lord-gang chief, Devin Franklin A.K.A. Baby Lord" (Doc. 38). He further claims that prison officials should have kept him and Baby Lord

apart because he was on Talley's "keep separate from list" (*Id*). In Talley's supplement to this motion, he claims on November 16, 2015, he encountered inmate "Koolaid-A.K.A. Orin Spann" while he was visiting the healthcare center at Pinckneyville (Docs. 50, 51, p. 1). Talley asserts that he placed "Koolaid-A.K.A. Orin Spann" on his "keep separate from list" while he was housed at Menard (*Id*.). Talley claims that if he did not appear on his "keep separate from list" it was because Menard personal intentionally deleted him (*Id., p. 2.*).

After Talley was housed at Pinckneyville, he was transferred to Western. On the same day that Talley notified the Court of his change of address, he filed a supplemental motion to his motion for a preliminary injunction and a temporary restraining order (Doc. 55). In this supplemental motion, Talley complains of his transfer to Western because he has pending lawsuits against "the wardens and the Internal Affairs staff" (*Id.*, p. 3).

Talley's motion for a temporary restraining order (Doc. 38) seeks the same relief sought in Talley's original motions for a temporary restraining order, which Magistrate Judge Wilkerson recommended denying. Due to the Court's previous finding that Talley is "prone to exaggeration," it is not likely that Talley was facing irreparable harm at the time he filed this motion for a temporary restraining order (Doc 30, p. 3). *Granny Goose Foods, Inc.*, 415 U.S. at 239 (holding that temporary restraining order should be issued to preserve "the status quo and prevent[] irreparable harm").

Talley requested a preliminary injunction by seeking a transfer from both Pinckneyville and Western (*see* Doc. 55). Talley requests these transfers because he states

that he once again feels unsafe where he is housed (Docs. 38, 55). Again, Magistrate Judge Wilkerson found Talley is prone to exaggerations and falsities. Indeed, he makes large sweeping allegations without any factual support. Talley offers this Court no new evidence that would allow it to find that Talley's allegations in his most recent motions seeking injunctive relief are credible. Because Talley's beliefs that the supposed actions taken against him have unconstitutional motivations are fully unsupported, the Court cannot find that Talley has a likelihood of success on the merits. *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 294 (7th Cir. 1997).

Even if the Court were to find Talley's new allegations credible, his motion for a preliminary injunction would be denied because there is not a reasonable likelihood of success on the merits. *Wisconsin Right to Life, Inc. v. Barland,* 751 F.3d 804, 830 (7th Cir. 2014). First, this action arises out of incidents alleged to have occurred at Menard. To the extent Talley is now asserting new claims against individuals at Pinckneyville and/or Western, those claims do not belong in this lawsuit. Most importantly, however, Talley cannot succeed on the merits because, as explained above, he simply does not have the right to be transferred to a facility of his choosing. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *See also Williams v. McGinnis*, 755 F. Supp. 230, 231 (N.D. Ill. 1991).

Further, it is once again likely that Talley's motion for a preliminary injunction in the form of a transfer out of Pinckneyville is moot. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason*, 83 F.3d at 811 (citing *Moore,* 862 F.2d at 150)."Allegations of a likely retransfer may not be based on mere

speculation." *Higgason*, 83 F.3d at 811 (citing *Preiser*, 422 U.S. at 403). Talley provides this Court with no evidence that there is a possibility that he would be transferred back to Pinckneyville.

## CONCLUSION

Accordingly, the Court **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 30), **REJECTS as moot** the earlier filed Report and Recommendation (Doc. 27), and **DENIES** all pending motions for temporary restraining order and/or preliminary injunction (Docs. 6, 10, 29, 38, and 55).

**IT IS SO ORDERED.**

**DATED:** May 6, 2016

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**