IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DURWYN TALLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-1032-NJR-GCS |
| | ) |
| TRACY LEE, JACQUELINE | ) |
| LASHBROOK, WILLIAM SPILLER, | ) |
| MICHAEL MONJE, BRANDON | ) |
| ANTHONY, LANCE PHELPS, | ) |
| KIMBERLY BUTLER, TERRI | ) |
| ANDERSON, DONALD | ) |
| STOLWORTHY, JEANETTE COWAN, | ) |
| and ZACH FITZGERALD, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson[1] (Doc. 253), which recommends the undersigned grant in part and deny in part the Motion for Summary Judgment filed by Defendants Terri Anderson, Brandon Anthony, Kimberly Butler, Jeanette Cowan, Zach Fitzgerald, Jacqueline Lashbrook, Tracy Lee, Michael Monje, Lance Phelps, and William Spiller (Doc. 220). The Report and Recommendation further recommends this Court deny Defendants' Motion to Supplement (Doc. 243). Defendants timely objected to the Report and Recommendation (Doc. 255), and Plaintiff Durwyn Talley filed a response (Doc. 257). For the reasons set forth below, Defendants' objections are sustained. The Court rejects

---

[1] This case was subsequently transferred to United States Magistrate Judge Gilbert C. Sison (Doc. 256) following the retirement of Judge Wilkerson.

Judge Wilkerson's Report and Recommendation and grants summary judgment to Defendants.

**BACKGROUND**

Plaintiff Durwyn Talley, an inmate of the Illinois Department of Corrections ("IDOC"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights. After threshold review of his amended complaint Talley was permitted to proceed on two counts:

Count 1: Defendants conspired to retaliate against Talley for filing grievances and lawsuits, by denying him placement in protective custody in violation of his rights under the First and Eighth Amendments; and

Count 2: Defendants failed to protect Talley from an excessive risk of harm in violation of the Eighth Amendment.

Talley's claims in this lawsuit relate to his time at Menard Correctional Center ("Menard"). Talley was transferred to Menard on April 9, 2014, and, upon his intake interview with Internal Affairs, requested single-cell, protective custody segregation status (Doc. 220-1, p. 3). Talley was concerned because he had been labeled a "stool pigeon" by a gang called the Gangster Disciples, and the Gangster Disciples had a hit out on him (*Id.*, p. 4). Furthermore, Menard has an active gang count, which means "if you have a hit out on you they'll take care of it." (*Id.*). Talley previously had a gang affiliation with the Gangster Disciples but by that point was "nonactive and retired." (*Id.*, p. 6). Talley expressed his desire to go to protective custody to an Internal Affairs officer (*Id.*). At his deposition, Talley did not know the name of the Internal Affairs officer that conducted his interview (*Id.*, p. 4). In an affidavit attached to his response to Defendants' motion, Talley states that the officer was Defendant Spiller (Doc. 232-1, p. 1).

Two days later, on April 11, 2014, the officer Talley now believes to be Defendant Spiller recommended that he be double-celled (*Id.*, p. 2). Talley was taken to segregation but was not placed in protective custody (Doc. 220-1, p. 6). While in segregation, Talley received threats that he was going to be killed (*Id.*, p. 7*)*. Talley continued to try to get single-cell protective custody by writing kites (notes) to Warden Butler, the Majors, Internal Affairs, and Correctional Officer Fitzgerald, but he did not get a response (*Id.*).

On April 6, 2015, Talley was released from segregation and was transferred to general population in the East House (*Id.*, pp. 6-7). Talley was threatened by high-ranking Gangster Disciples that were also housed in the East House (*Id.*, p. 7). Talley again requested protective custody by writing kites to the lieutenant and Internal Affairs. He did not get a response to those kites (*Id.*). Talley also talked to his gallery officers and told them he feared for his life and safety and he wanted to go to protective custody (*Id.*). Officer Fitzgerald told Talley that people can be killed in protective custody as well and called him stupid in front of other inmates (*Id.*).

At some point in early May 2015, another inmate told Talley not to go to yard because "they gonna hit you." (*Id.*, p. 8). This caused Talley to send a request to mental health stating he was suicidal and needed help (*Id.*). When the officer came to get Talley to take him to the Health Care Unit, the Gangster Disciples in the East House began yelling that they were going to stab him "when we catch you." (*Id.*)

Talley spent about ten days in the Health Care Unit before he talked the mental health workers into having the officers allow him to sign into temporary protective custody (*Id.*, p. 9). Talley filled out paperwork stating that he had a gang hit out on him, that he had been labeled a "stool pigeon" for years, and that he feared his life and

safety (*Id.*, p. 10). While in temporary protective custody, Talley told Defendant Lashbrook about his situation (*Id.*, p. 12). Talley remained in temporary protective custody for two or three days before he was moved to North 1 Cell House (*Id.*).

On May 18, 2015, Jeanette Cowan and Officer Young interviewed Talley (*Id.*, p. 10). Talley told them about the threats against him, but Cowan told Talley he would have to be attacked before they would allow him to get protective custody (*Id.*). Cowan further told Talley that he had a bad history, he was a troublemaker, and that the inmates who were threatening him needed to threaten him in writing before he would be put in protective custody (*Id.*). When asked whether Cowan mentioned any previous grievances or lawsuits he had filed when he was denied protective custody, Talley testified that "if I'm not mistaken" Cowan said "she knows about my grievances. That she knows I'm a grievance writer." (*Id.*).

Cowan subsequently issued a report recommending that Talley's request for protective custody be denied (Doc. 220-5). She noted that his behavior was not indicative of someone needing protection, he admitted he went on crisis watch to manipulate his housing, and, in fact, others may need protection from him considering his history of assaults on others (*Id.*). She further stated that "[h]is behavior also shows that he manipulates his housing—this time he wants out of a max joint back to a medium." (*Id.*). Officer Young also concluded that the request should be denied, as there was no documented history of Talley being a snitch, and "the intel office feels as if he is using all means necessary to manipulate his housing assignment." (*Id.*). The Warden concurred in this decision on May 19, 2015 (*Id.*).

Talley appealed the decision not to place him in protective custody to the

Administrative Review Board ("ARB") (*Id.*, p. 11). Defendant Terri Anderson, a chairperson on the ARB, held a hearing on Talley's appeal (*Id.*; Doc. 220-6). Talley told Anderson about the threats he had received, being labeled a stool pigeon, and that he feared for his life and safety (*Id.*). He also claimed that Internal Affairs destroyed his intake interview document because he had two lawsuits against them (Doc. 220-6). The ARB found that Talley had signed into protective custody at Pontiac Correctional Center in 2011 for essentially the same reason, only to sign out two days later (*Id.*). Furthermore, Internal Affairs could not confirm that Talley had provided information on other inmates (*Id.*). Based on a review of all information, Anderson found there was insufficient information to warrant Talley going to protective custody and recommended he go to general population (*Id.*).

On April 1, 2015, Talley went to general population in the North 2 Cell House (Doc. 220-2). He was never attacked by any other inmates at Menard, and he has since been transferred to another institution (Doc. 220-1, pp. 12, 17).

Talley testified that he has filed other lawsuits against Butler, Fitzgerald, and Lashbrook and that, while he did not have direct evidence of their knowledge of the suits, he had circumstantial evidence in the form of "repeated misconduct that [he] experienced and endured at the hands of the defendants in this case who works as a unit" (*Id.*, p. 13).

Talley admitted he has not filed grievances or lawsuits against any of the other named Defendants, except that he filed grievances against "Internal Affairs" in general because they act "as a whole, one unit." (*Id.*). He also admitted he had no direct evidence that any Defendants were aware of his previous lawsuits, but asserted he had circumstantial evidence in the form of the "repeated misconduct" he "endured at the

hand of the defendants." (*Id.*). Nevertheless, he stated that he believed he was denied protective custody for filing lawsuits and grievances because of "the whole attitude of the interview" with Cowan and the fact that his request was quickly denied (*Id.*, p. 16).

On April 11, 2018, Defendants filed a Motion for Summary Judgment (Doc. 220). Defendants first argue that Talley cannot succeed on his failure to protect claim because he never suffered any actual physical harm and because he has no evidence that Defendants acted with malicious or sadistic intent (*Id.*). They further argue he cannot succeed on his retaliation claim when there is no evidence that Talley's First Amendment activity was the reason Defendants decided to deny protective custody (*Id.*). Finally, they argue that, even if Talley's constitutional rights were violated, Defendants Anthony, Butler, Cowan, Fitzgerald, Lashbrook, Lee, Monje, Phelps, Spiller, and Stolworthy were not personally involved in any constitutional violation, Defendants are entitled to qualified immunity, Talley is not entitled to compensatory damages under the Prison Litigation Reform Act ("PLRA") without any physical injury, and Talley is not entitled to punitive damages.

In response, Talley argues there are genuine issues of material fact that preclude summary judgment (Doc. 220). He asserts he repeatedly complained to prison staff that there was gang hit out on him, but Defendants ignored him. He further claims Defendants showed malicious intent by denying him protective custody in April 2014 without doing an investigation and again in May 2015. He further contends that while Defendants assert there is no evidence of retaliation, they did not address his conspiracy claim in Count 1 and, thus, have waived that argument. And, he asserts, a plaintiff can use circumstantial evidence to establish a conspiracy as long as the evidence is not

speculative. Finally, he contends he is entitled to compensatory, punitive, and any other damages the Court may award.

On August 8, 2018, Defendants filed a motion for leave to file a supplemental declaration in support of their motion for summary judgment (Doc. 243). The motion states that defense counsel was provided with new information relevant to the case from Defendant Stolworthy. Accordingly, they seek to supplement their summary judgment motion with a declaration from Defendant Stolworthy.

## THE REPORT AND RECOMMENDATION

On December 21, 2018, Judge Wilkerson entered a Report and Recommendation that recommends the undersigned deny Defendants' motion for leave to supplement and grant in part and deny in part their motion for summary judgment (Doc. 253).

With regard to Count 1, Judge Wilkerson was unpersuaded by Defendants' argument that there is no evidence they were aware of any lawsuits or grievances that Talley filed against them. He further found that Defendants did not address whether Talley's grievances and/or lawsuits could have motivated all Defendants, in general, to retaliate against him. Thus, there is a question of fact as to whether Talley's general litigation activities were a motivating factor in Defendant Cowan's decision to recommend that protective custody be denied. Accordingly, Judge Wilkerson recommends that Defendants be denied summary judgment on Count 1.

Judge Wilkerson further recommends that summary judgment be denied on Count 2 because there is no requirement under current Seventh Circuit case law that a prisoner show evidence of physical injury, and Defendants do not address whether Talley could be entitled to nominal damages or injunctive relief.

With regard to Defendants' argument that only Defendant Anderson was personally involved in any potential constitutional violation, Judge Wilkerson noted that omissions can violate civil rights, and a supervisor's explicit or implicit approval of such omissions can lead to Section 1983 liability.

Finally, Judge Wilkerson found that while there is a question of fact as to whether any of Defendants did anything to provide Talley with protection, there is no evidence that Defendant Stolworthy retaliated against Talley as Stolworthy was only sued in his supervisory capacity for failing to manage Defendant Anderson. Because supervisory officials can delegate investigations into the needs of individual inmates to persons capable of making such investigations, *i.e.*, Defendant Anderson, Talley's claim against Stolworthy should fail as a matter of law.

Judge Wilkerson also recommended denying Defendants' qualified immunity claim without further discussion, as well as Defendants' motion to supplement their motion because they provided no good cause for doing so.

## DEFENDANTS' OBJECTION

On January 7, 2019, Defendants filed an objection to the Report and Recommendation. (Doc. 255). Defendants argue that Judge Wilkerson conflated the issues of whether Talley has an injury sufficient to state a claim and whether the PLRA allows recovery in absence of a physical injury. While Section 1997e(e) does allow for nominal damages, the issue concerning the *type* of relief a plaintiff may receive is separate from whether a plaintiff has proved an injury that entitles them to relief. Because Talley has conceded that he did not suffer a physical injury, and because he has offered no evidence to prove he suffered a psychological injury rising to the level required for an

Eighth Amendment violation, he cannot meet the required elements of a failure to protect claim.

Second, Defendants argue, even if Defendants Fitzgerald, Lashbrook, and Butler were aware of a concurrent suit against them as well as former cases against Defendant Butler, none of the other Defendants are aware of any lawsuits. And while Talley has filed grievances against the "Internal Affairs Unit" generally, these Defendants themselves are unaware of any grievance against them. Judge Wilkerson's presumption otherwise, they argue, is based on speculation and conjecture.

Talley filed a response to the objection on January 25, 2019 (Doc. 257), in which he argues he is entitled to relief in the form of nominal and punitive damages. He also claims he submitted proof that Defendants were aware of his lawsuits in that they worked as "a unit" and that his ill treatment upon transfer to Menard supports this awareness.

### LEGAL STANDARD

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). If only a "partial objection is

made, the district judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734,739 (7th Cir. 1999). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## DISCUSSION

**A.     Conspiracy to Retaliate**

To prevail on a conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). "Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Id.* (quoting *Beaman*, 776 F.3d at 511).

Because Talley must show Defendants' overt acts actually deprived him of his First Amendment rights, he must first demonstrate that Defendants retaliated against him. To succeed on a retaliation claim, a prisoner must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012)).

After the plaintiff has made his *prima facie* showing, the burden shifts to the defendants to rebut the causal inference raised by plaintiff's evidence. *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013) (once the plaintiff makes his *prima facie* case, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive").

Here, the only non-speculative evidence in support of Talley's claim that his lawsuits and grievances were a motivating factor in Defendants' decision to deny him

protective custody is his testimony that Defendant Cowan said he was a "grievance writer" in his protective custody interview. Accordingly, construing the facts in the light most favorable to Talley, the evidence in the record shows that he wrote grievances; Cowan called him a "grievance writer"; and Cowan subsequently recommended that his protective custody status be denied. The Court finds this insufficient to establish a *prima facie* case of retaliation, given the other reasoning that Cowan provided in her report.

Even if Talley's First Amendment activity was a motivating factor for denying his protective custody status, there is evidence that Defendants would have denied Talley protective custody despite anyway. Cowan and Young stated in their reports that Talley's behavior indicated he did not actually need protection, and there was no documented history of him being a snitch. Both officers also noted that Talley appeared to be attempting to manipulate his housing situation. The Chief Administrative Officer denied Talley protective custody based on the information in Cowan and Young's reports, which made no mention of his grievance writing or lawsuits. Furthermore, the ARB held an independent hearing on the matter, during which Talley was personally interviewed. Based on the information before it, as well as Talley's statement, the ARB concluded there was insufficient information to warrant Talley's placement in protective custody.

Because Defendants have met their burden of showing Talley's request for protective custody would have been denied in the absence of any bad motive, Talley has not shown he was retaliated against. And because he has not established any First Amendment retaliation, his conspiracy claim must fail.

B.  **Failure to Protect**

To state a failure-to-protect claim, a plaintiff must allege facts from which a court

could conclude that (1) he faces a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)). A generalized risk of violence is not enough, however, "for prisons are inherently dangerous places." *Id.* (citing *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). The threat must also reflect that the inmate is subject to a substantial risk of future harm, one that is "almost certain to materialize if nothing is done." *Id.*

In *Babcock v. White*, the facts of which were discussed by Judge Wilkerson and described as "strikingly similar" to the facts here, the Seventh Circuit addressed the question of "whether or not a . . . prisoner who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a . . . claim for money damages based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner."[2] *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). The answer is no, at least where the "exposure to risk of harm cannot be said to result from an official's malicious or sadistic intent." *Id.* The Court then compared Eighth Amendment claims to tort law, which requires an element of injury, reading *Farmer v. Brennan* as speaking to the duty owed by prison officials in failure-to-protect cases. *Id.* at 271 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994). "*Farmer* is largely silent as to the injury element, presumably because in that case, the injury was clear: Farmer allegedly had been raped and beaten as a result of the defendants' breach of their duty not to knowingly subject him to a substantial risk of serious harm." *Id.* While an Eighth

---

[2] There is no motion for injunctive relief pending, and Talley admits that he has since been transferred to another prison.

Amendment claim is not an ordinary tort, the Court explored the bounds of the Eighth Amendment's prohibition against cruel and unusual punishment, asking "what harm must actually befall the prisoner before a court may say that he is entitled to monetary compensation for a violation of his Eighth Amendment rights?" *Id.* at 271.

One answer to that question would be that no harm is necessary, if at least nominal damages are assumed. *Id.* But the Court found that approach was not appropriate in the Eighth Amendment deliberate indifference context. *Id.* The Court concluded that "[h]owever legitimate Babcock's fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.* at 272. What Babcock ultimately was alleging is the same as Talley is alleging here: "not a 'failure to prevent harm,' but a failure to prevent exposure to risk of harm." *Id.* (quoting *Farmer*, 511 U.S. at 834).

The Court also distinguished between Eighth Amendment excessive force cases and conditions-of-confinement cases, noting that failure-to-protect cases fall within the latter category. *Id.* at 273. In excessive force cases, a prisoner need not allege or prove "significant injury" to recover damages. *Id.* But extreme deprivations are required to make out a conditions-of-confinement claim. *Id.* Here, Talley has not demonstrated any such deprivation. *See id.* And while Judge Wilkerson relied on *Calhoun v. DeTella* to distinguish *Babcock*, *Calhoun* was an excessive force case. Accordingly, the Court finds that discussion unpersuasive.

Talley also has not proven that Defendants' failure to take measures to protect him from inmates was the result of malicious or sadistic intent. While he points to the quick decision in April 2014 by Defendant Spiller to deny him protective custody without doing

an investigation, he provides no evidence of the normal procedure for determining such issues or how Defendant Spiller deviated from those procedures. And with regard to the May 2015 decision, an investigation clearly was completed, all the way through appeal to the ARB. Neither of these actions demonstrate malicious or sadistic intent. Accordingly, the Court finds that Defendants are entitled to judgment on Talley's failure-to-protect claim.

## CONCLUSION

For these reasons, the Court **SUSTAINS** Defendants' objection (Doc. 255) and **REJECTS** the Report and Recommendation (Doc. 253). Defendants' Motion for Summary Judgment (Doc. 220) is **GRANTED**. Defendants' Motion to Supplement (Doc. 243) is **DENIED as moot**.

Plaintiff Durwyn Talley shall recover nothing, and his claims are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: March 29, 2019

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**